STATE OF NEW MEXICO ex rel. NEW MEXICO STATE HIGHWAY DEPARTMENT, Plaintiff–Appellee,

v.

Neil GOLDSCHMIDT, Secretary of Transportation of the United States, Defendant–Appellant.

Nos. 80–1666, 80–1684.

United States Court of Appeals, Tenth Circuit.

Argued July 8, 1980.

Decided Aug. 29, 1980.

Stephen S. Hamilton, Asst. Atty. Gen., New Mexico State Highway Dept., Santa Fe, N. M., for plaintiff–appellee.

Michael Jay Singer, Washington, D.C. (Robert E. Kopp, Anthony J. Steinmeyer and Mary A. McReynolds, Attys., Civil Division, Dept. of Justice and Alice Daniel, Asst. Atty. Gen., Washington, D.C., R. E. Thompson, U. S. Atty., Albuquerque, N. M., Gregory Wolfe, Dept. of Transp., Washington, D.C., on brief), for defendant–appellant.

Before McWILLIAMS, BREITENSTEIN and BARRETT, Circuit Judges.

McWILLIAMS, Circuit Judge.

The State of New Mexico brought suit against Neil Goldschmidt, Secretary of Transportation, seeking declaratory judgment and injunctive relief. Specifically, New Mexico claimed that the President acted unlawfully in deferring or impounding certain federal–aid highway funds otherwise available for use in the fiscal year 1980, and that the Secretary thereafter acted improperly in allocating the remaining highway funds under a formula adopted by the Secretary. Upon hearing, the trial court held that the President was without authority to defer the use of the highway funds here involved and that the formula adopted by the Secretary was improper. By preliminary injunction, the trial court ordered the Secretary to make available to New Mexico for obligation in the fiscal year 1980 the total sum of $93,412,381.47, the amount that would have been available to New Mexico but for the deferral order and the allocation formula. Goldschmidt appealed the preliminary injunction thus entered and in connection therewith obtained from this Court an order staying the preliminary injunction. That appeal is No. 80–1666.

Thereafter, the trial court granted New Mexico's motion for summary judgment and entered a permanent injunction. In addition to ordering the Secretary to make available for New Mexico for obligation in fiscal year 1980 the total sum of $93,412,381.47, the permanent injunction ordered the Secretary to approve forthwith six specific projects of the State of New Mexico and to obligate forthwith the funds for those six projects which totalled $20,162,179.05. Goldschmidt appeals from the permanent injunction thus entered, and in connection therewith obtained from this Court an order staying the permanent injunction. That appeal is No. 80–1684.

The preliminary injunction was entered on May 27, 1980. An amended preliminary injunction was entered on June 25, 1980. The permanent injunction was entered on July 1, 1980. On July 8, 1980, the President signed the Supplemental Appropriations and Rescission Act, 1980. It is the initial position of Secretary Goldschmidt that the Supplemental Appropriations and Rescission Act, hereinafter referred to as the Act, has mooted the present controversy. In this regard the Secretary asserts that the Act, which imposes a ceiling on federal highway funds available for use during the balance of the current fiscal year, and also

sets out a formula for the allocation to the states of such funds, governs all highway funds "not obligated on the date of the enactment of this Act," i. e. July 8, 1980. The Secretary argues that the amounts referred to in the permanent injunction were *not* "obligated" as of July 8, 1980, and that the highway funds must now be distributed in accord with the Congressional mandate. It is on such reasoning that the Secretary claims that the controversy has now become moot from both the constitutional standpoint, and, alternatively, its remedial counterpart.

As above mentioned, in the trial court the State of New Mexico challenged the President's deferral order and the Secretary's formula for allocating the federal highway funds still remaining for use in fiscal year 1980. The trial court upheld this challenge, holding that the deferral order and the allocation formula were both improper and granted appropriate injunctive relief. The trial court stayed its order for a short period of time in order to allow Goldschmidt to obtain relief from this Court. Before the stay entered by the trial court had expired, Goldschmidt obtained a stay from this Court to remain in effect until the appeal from the permanent injunction was finally determined.

The present dispute was but one of many similar disputes between other states and Secretary Goldschmidt. With a full awareness of these pending controversies between the several states and the Secretary, Congress passed legislation designed to resolve fully all such controversies. See Supplemental Appropriations and Rescission Act, 1980, Pub.L. No. 96–304, 94 Stat. 857 (1980). This Act was signed by the President on July 8, 1980. The Act set a Congressional ceiling for federal highway funds for the balance of fiscal year 1980, which was slightly higher than the ceiling imposed by the President's deferral order. The Act further provided that obligations made by the Secretary *prior* to July 8, 1980, could not be de–obligated, and that funds *not* obligated as of July 8, 1980, should be allocated and obligated under a formula quite similar to the earlier formula of the Secretary.

We deem the Act to clearly indicate that unobligated highway funds as of July 8, 1980, are to be allocated and obligated according to the formula set out in the Act itself, regardless of the fact that there were outstanding orders of various trial courts concerning the allocation and obligation of highway funds. Such reading is reinforced by the Conference Report on the compromise bill that became the Act, which states that " 'amounts not obligated on the date of enactment of the Act' shall be determined on the basis of *actual* obligations, without regard to set–asides or other court orders." (Emphasis added.) H.R.Conf.Rep. No. 96–1149, 96th Congress, 2d Session, 56–57 (1980). Reference to legislative history is proper even though the statute under consideration is itself quite clear. Such reference is permissible in order to make certain that the "clearness" of the statute is not superficial in nature. *Train v. Colorado Public Interest Research Group, Inc.*, 426 U.S. 1, 96 S.Ct. 1938, 48 L.Ed.2d 434 (1976) and *Hunt v. Nuclear Regulatory Commission*, 611 F.2d 332 (10th Cir. 1979), *cert. denied*, 445 U.S. 906, 100 S.Ct. 1084, 63 L.Ed.2d 322 (1980).

It is well settled that the enactment of legislation can moot an appeal even though there may have been a viable issue in the district court. *Valdez v. Applegate*, 616 F.2d 570 (10th Cir. 1980). Our review of the judgment of the district court must be in the light of the law as it now stands, not as it stood when the judgment below was entered. *Diffenderfer v. Central Baptist Church*, 404 U.S. 412, 92 S.Ct. 574, 30 L.Ed.2d 567 (1972) and *Hall v. Beals*, 396 U.S. 45, 90 S.Ct. 200, 24 L.Ed.2d 214 (1969). The issue before the district court was whether the President's deferral order and the Secretary's allocation formula complied with applicable statutory law. Those matters would appear to be moot at the present time, inasmuch as subsequent to the entry of the permanent injunction, Congress has enacted legislation which controls the allocation and obligation of highway funds for

the balance of the fiscal year 1980. The Act, by its terms, clearly governs the allocation and obligation of all funds which as of July 8, 1980, were unobligated. The funds here in question were unobligated as of July 8, 1980, and such fact would appear to moot the claim that the President and the Secretary, acting under the law as it existed prior to July 8, 1980, had acted improperly.

■ If we understand it, the State of New Mexico appears to now concede that the part of the permanent injunction which ordered the Secretary to make available to New Mexico for obligation in the fiscal year of 1980 the sum of $93,412,381.47 has been mooted by the Act. However, the State of New Mexico claims that the remaining part of the permanent injunction which ordered the Secretary to forthwith approve six described projects of the State of New Mexico and to forthwith obligate sufficient funds ($20,162,179.05) to finance those six projects has not been mooted by the Act. This contention is based on the argument that equity regards as done that which ought to be done, and that the court's order to obligate is equivalent to actual obligation. We do not agree with such argument. To so hold would be at odds with the Conference Report which stated that the phrase "not obligated on the date of enactment of the Act" means all funds not "actually" obligated on that date, "without regard to set asides or other court orders." Recognizing full well that whether a controversy has been rendered moot by intervening legislation is in the last analysis a matter for the courts, nonetheless we do note, and emphasize, that Congress most certainly intended to moot the present case, among others, by enacting the Act.

As above indicated, there have been suits similar to the instant one instituted in other federal district courts, with varying and dissimilar results. *State of Alaska v. Goldschmidt*, Civil Action No. A–80–140 (D.Alaska, May 21, 1980); *State of Arkansas v. Goldschmidt*, 492 F.Supp. 621 (E.D. Ark. 1980); *State of Maine v. Goldschmidt*, 494 F.Supp. 93 (D.Me. 1980); and *State of*

*Vermont v. Goldschmidt*, Civil Action No. 80–1375 (D.Vt., July 7, 1980). Insofar as we have been advised, the only such case that has as yet been reviewed by a Circuit Court is *State of Arkansas v. Goldschmidt*, 627 F.2d 839 (8th Cir. 1980). Needless to say, the *Arkansas* case is almost identical to the instant one.

In the *Arkansas* case the State of Arkansas brought suit against the Secretary challenging the allocation of federal–aid highway funds. Specifically, the State challenged the President's deferral order and the Secretary's allocation formula. The district court held that the President lacked authority to defer and that the Secretary's allocation formula was improper. The district court entered judgment directing the Secretary to allocate substantially more highway funds to Arkansas. The Secretary appealed. On appeal, the Eighth Circuit reversed, holding that the case had become moot because of Congress's enactment of the Act. In thus holding, the Eighth Circuit held that the State of Arkansas never obtained any vested right in the disputed funds, even though the district court in that case had, prior to July 8, 1980, entered a judgment directing the Secretary to allocate additional funds to Arkansas. The Eighth Circuit declared that the district court's holding never ripened into an "obligation," as that word is used in the Act. Under the circumstances, we are of the firm view that the State of New Mexico also did not obtain any vested right to the funds which were the subject of the district court's permanent injunction. As in the *Arkansas* case, the district court in the present case stayed its own order for a time, and this Court later continued that stay until such time as the appeal itself was finally resolved.

In short, the funds which are the subject matter of the trial court's permanent injunction were *not* obligated prior to July 8, 1980, and therefore are now governed by the terms of the Act. Certainly the question as to the propriety of the President's deferral order and the Secretary's allocation

formula is now only academic, since Congress has now mandated its own ceiling and formula. We believe that the present controversy is constitutionally moot, i. e. there remains at this time no Article III case or controversy.

Brief reference should be made to the Secretary's alternative argument that even if some remnant of the original controversy be still alive, this is an instance where the courts, as a matter of prudence and sound discretion, should stay their hand and withhold drastic injunctive relief of the type here sought. This is proper, even though there might be, in the technical sense, the power to grant such relief. *United States v. W. T. Grant Co.*, 345 U.S. 629, 73 S.Ct. 894, 97 L.Ed. 1303 (1953) and *Chamber of Commerce v. Department of Energy*, 627 F.2d 289 (D.C. Cir. 1980). The doctrine of remedial mootness would appear to have particular applicability to the instant appeal in its present posture. Hence, we conclude that the present appeal is moot from the remedial standpoint, as well as being moot in the constitutional sense.

The appeal from the preliminary injunction, No. 80–1666, is dismissed. An order granting a preliminary injunction is merged in a subsequent order granting a permanent injunction, and when both orders are appealed from, the former will be dismissed. *Atomic Oil Co. of Oklahoma, Inc. v. Bardahl Oil Company*, 419 F.2d 1097 (10th Cir. 1969), *cert. denied*, 397 U.S. 1063, 90 S.Ct. 1500, 25 L.Ed.2d 685 (1970) and *Peterson v. Brotherhood of Locomotive Firemen and Enginemen*, 268 F.2d 567 (7th Cir. 1959).

The appeal from the permanent injunction, No. 80–1684, being moot, the judgment of the district court is hereby vacated, and the cause is remanded with directions to dismiss. *Great Western Sugar Co. v. Nelson*, 442 U.S. 92, 99 S.Ct. 2149, 60 L.Ed.2d 735 (1979) and *Duke Power Co. v. Greenwood County*, 299 U.S. 259, 267, 57 S.Ct. 202, 205, 81 L.Ed. 178 (1936).