**F I L E D**
United States Court of Appeals
Tenth Circuit

MAR 25 1997

**PATRICK FISHER**
**Clerk**

PUBLISH

UNITED STATES COURT OF APPEALS

TENTH CIRCUIT

---

SOUTHERN UTAH WILDERNESS
ALLIANCE, a Utah non-profit
corporation,

        Plaintiff-Appellant,

    v.

VERLIN SMITH, in his official capacity
as Manager of the Bureau of Land
Management; BRUCE BABBITT, in his
official capacity as Secretary of the
Interior; and BUREAU OF LAND
MANAGEMENT,

        Defendants-Appellees.

No. 95-4145

---

**APPEAL FROM THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF UTAH**
**(D.C. No. 94-CV-983)**

---

Heidi J. McIntosh, Southern Utah Wilderness Alliance, Salt Lake City, Utah (Lori Potter, Debra Asimus, Sierra Club Legal Defense Fund, Denver, Colorado, with her on the briefs), for Plaintiff-Appellant.

Edward J. Shawaker (Lois J. Schiffer, Assistant Attorney General, Ellen J. Kohler, and David C. Shilton, Attorneys, Department of Justice, with him on the brief), Washington, D.C., for Defendants-Appellees.

Before **ANDERSON, MCWILLIAMS,** and **WEIS,**[*] Circuit Judges**.**

---

**ANDERSON,** Circuit Judge**.**

---

On October 12, 1995, SUWA filed suit against the defendants, alleging, among other things, that the defendants violated section 7(a)(2) of the Endangered Species Act, 16 U.S.C. § 1536(a)(2), by not consulting the United States Fish and Wildlife Service (the "FWS") regarding the impact the BLM's <u>Moquith Mt. WSA Management Guidance and Schedule</u> might have on Welsh's Milkweed, a threatened species. After hearing cross-motions for summary judgment, the district court found the defendants had not violated section 7(a)(2) and entered summary judgment denying SUWA's claim. Alternatively, the district court determined the claim was moot. This appeal followed.

Having independently reviewed the record, we agree with the district court that SUWA's section 7(a)(2) claim is moot. For the following reasons, we vacate the portion of the district court's judgment relating to SUWA's section 7(a)(2) claim, and remand with directions that the claim be dismissed.

---

[*]Honorable Joseph F. Weis, Jr., Senior Circuit Judge, United States Court of Appeals for the Third Circuit, sitting by designation.

## I.

The Moquith Mountain Wilderness Study Area ("WSA"), located in Kane County, Utah, is managed by the BLM. Among other things, the WSA includes part of the "Coral Pink Sand Dunes." Other portions of the Dunes are located within the Coral Pink Sand Dunes State Park. Since at least the early 1980s, visitors have used off-road vehicles ("ORVs") both in the State Park and the WSA.

In 1987, Welsh's Milkweed was listed as a threatened species under the Endangered Species Act, and the Coral Pink Sand Dunes were designated as critical habitat. Appellant's App. at 43. In 1992, the FWS promulgated a Welsh's Milkweed Recovery Plan. The "immediate objective" of the Recovery Plan is to manage the Milkweed's habitat "so that viable populations can be maintained throughout the range of the species." Id. at 49. The Recovery Plan's long-term objective is to delist the Milkweed by achieving long-term demographic stability among Milkweed populations. Id.

Since 1983, the BLM has monitored Milkweed populations within the Dunes. In 1990, the BLM formed a Moquith Mt./Parunuweap Canyon Multiple Land Use Steering Committee. Supp. App. at 39. The BLM requested the FWS' participation on this committee, and the FWS designated Larry England as its representative. Id. Mr. England was the FWS employee responsible for monitoring the Milkweed and for preparing the 1992 Recovery Plan. Id. The Committee met regularly throughout 1990 and 1991. The

FWS was always invited to attend these meeting, and Mr. England attended frequently. See id. at 52, 56, 63.

The Committee's final management recommendations were issued in September, 1991. Id. at 64-84. In these recommendations, the Committee explicitly addressed the impact of ORV use on the Milkweed, stating that the precise impact of ORV use on the Milkweed was not yet known, and that the "BLM, in coordination with the [FWS], should implement research studies that can determine the impacts of ORV's on plant survival." Id. at 69. The Committee also made several recommendations regarding ORV use generally which were aimed at bringing ORV use within the WSA into harmony with previously established management goals.

In 1992, the BLM formed an interdisciplinary team to carry on the work begun by the Steering Committee. Id. at 132. Again, Mr. England participated on the team as an FWS representative. Id. at 134, 135. Among other things, the team discussed ORV impact on the Milkweed, and considered immediate actions the BLM could take to limit trails developing in the Dunes and to limit camping and campfires. Id. at 173-75. On February 19, 1993, Mr. England also attended a Milkweed Recovery Meeting sponsored by the BLM, where ORV impact on the Milkweed was again discussed. Id. at 160-63.

On February 28, 1994, the BLM issued the Moquith Mt. WSA Management Guidance and Schedule (the "Schedule"). The Schedule's objective was to "identify areas within the WSA that are receiving unauthorized vehicle use and implement

management actions that will discourage and curtail this use." Appellant's App. at 72. The Schedule required the closing of several ORV routes to the Dunes, and restricted camping and campfires. While not eliminating ORV use entirely, the Schedule noted explicitly that the closure of certain ORV access routes was intended to protect Milkweed Habitat. Id. at 77.

On October 12, 1994, SUWA filed suit against the defendants, alleging (1) that the BLM violated section 7(a)(2) of the ESA by not consulting the FWS prior to implementing the Schedule, (2) that the Schedule violated section 7(a)(1) of the ESA by failing to conserve the Milkweed as required by the FWS Recovery Plan, and (3) that the Schedule failed to prevent unnecessary degradation of public resources. Id. at 1-9 (Complaint). SUWA requested a declaratory judgment noting the violations, and an injunction compelling the defendants to "stay implementation of the Schedule, to consult with the U.S. Fish and Wildlife Service regarding the impacts of ORV use on Welsh's milkweed, to implement the recommendations of the Recovery Plan within the WSA, and to prevent any unnecessary or undue degradation to the Welsh's milkweed and the milkweed's critical habitat." Id. at 8-9.

The BLM filed the administrative record with the district court on February 9, 1995. SUWA moved to strike Documents 68 and 69, the last two documents in the administrative record. Document 68 is a letter, dated February 2, 1995, from the BLM to the FWS. Appellant's App. at 97. The letter sets forth the "chronological record" of the

- 5 -

two Agencies' consultations regarding ORV impact on the Milkweed. The letter also requests the FWS' "concurrence regarding the actions and conclusions resulting from informal consultation that have taken place thus far." Id. at 101.

Document 69 is the FWS' response to the BLM's February 2 missive. By letter dated February 6, 1995, the FWS acknowledged its "informal interagency consultation" with the BLM regarding the BLM's actions affecting the Milkweed, and praised the BLM for its "accomplished and continuing conservation efforts for *Asclepais welshii* identified in the Welsh's milkweed recovery plan." Id. at 102. The FWS also stated:

> The Service has reviewed the Bureau's <u>Moquith Mt. WSA Management Guidance and Schedule</u> (management guidance). Implementation of the management guidance will not adversely affect *Asclepais welshii*. Furthermore, the Service finds the above management guidance to be consistent with stated goals of the Welsh's milkweed recovery plan and a start in the implementation of [recovery plan tasks]. The Service recommends that the management guidance remain in effect until the RMP and HMP are developed and a formal land management plan and designation is extended to the Dunes.

Id. at 103.

SUWA's motion to strike Documents 68 and 69 was based on the contention that these letters were post hoc rationalizations for a prior agency action, and were not part of the administrative record at the time the BLM decided to implement the Schedule. The district court granted SUWA's motion to strike in part. The district court refused to consider Documents 68 and 69 in the context of what information was before the BLM at the time it implemented the Schedule. The court accepted Documents 68 and 69,

however, for the limited purpose of demonstrating whether informal consultation between the Agencies had occurred.  Id. at 22 (Order filed June 21, 1995).

After hearing cross-motions for summary judgment, the district court denied all three of SUWA's claims on the merits.  The district court also found that SUWA's section 7(a)(2) claim was moot because the "relief sought has been obtained."  Id. at 21. SUWA appeals only the denial of the section 7(a)(2) "failure to consult" claim.  The only relief SUWA requests is a declaration that the defendants violated section 7(a)(2), and an injunction staying implementation of the Schedule and ordering the BLM to consult the FWS.

## II.

### A.    Injunctive Relief

On appeal, the defendants argue, among other things, that the district court was correct in finding SUWA's claim moot.  They contend that even if the BLM did not complete its consultation with the FWS *prior* to implementing the Schedule, such consultation has now been completed.  Since consultation is the only relief sought by SUWA, the defendants conclude that the relief has already been obtained and an injunction would be unnecessary.  We agree.

Article III mootness is "the doctrine of standing set in a time frame:  The requisite personal interest that must exist at the commencement of the litigation (standing) must

continue throughout its existence (mootness)." Arizonans For Official English v. Arizona, ___ U.S. ___, 1997 WL 84990, at *14 n.22 (U.S. March 3, 1997) (quoting Henry Monaghan, Constitutional Adjudication: The Who and When, 82 Yale L.J. 1363, 1384 (1973)). A federal court has no power to give opinions upon moot questions or declare principles of law which cannot affect the matter in issue in the case before it. Church of Scientology of California v. United States, 506 U.S. 9, 12 (1992). Thus, to be cognizable, a suit must be "a real and specific controversy admitting of specific relief through a decree of a conclusive character." Preiser v. Newkirk, 422 U.S. 395, 401 (1975) (quoting Aetna Life Ins. Co. v. Haworth, 300 U.S. 227, 241 (1937)). If an event occurs while a case is pending that heals the injury and only prospective relief has been sought, the case must be dismissed. Fund for Animals v. Babbitt, 89 F.3d 128, 133 (2d Cir. 1996).

Closely related to Article III mootness is the "prudential mootness" arising from doctrines of remedial discretion. Prudential mootness addresses "not the power to grant relief but the court's discretion in the exercise of that power." Chamber of Commerce v. United States Dep't of Energy, 627 F.2d 289, 291 (D.C. Cir. 1980). In some circumstances, a controversy, though not moot in the strict Article III sense, is "so attenuated that considerations of prudence and comity for coordinate branches of government counsel the court to stay its hand, and to withhold relief it has the power to grant." Id. We have expressly recognized the doctrine of prudential mootness, and have

stated that it has particular applicability in cases, such as this one, where the relief sought is an injunction against the government.  Building & Constr. Dep't v. Rockwell Int'l Corp., 7 F.3d 1487, 1492 (10th Cir. 1993); New Mexico v. Goldschmidt, 629 F.2d 665, 669 (10th Cir. 1980).  Under both Article III and prudential mootness doctrines, the central inquiry is essentially the same: have circumstances changed since the beginning of litigation that forestall any occasion for meaningful relief.  13A Charles Alan Wright et al., Federal Practice and Procedure § 3533.3 (2d ed. 1984).  For the following reasons, we find this suit is mooted under either doctrine.

As it relates to this case, section 7(a)(2) requires the BLM, *in consultation with the FWS*, to insure that any action the BLM authorizes, funds, or carries out is not likely to jeopardize the continued existence of a listed species, or result in the destruction or adverse modification of the species' habitat.  See 16 U.S.C. § 1536(a)(2).  The regulations promulgated under section 7(a)(2) provide that this consultation may be formal or informal:

### § 402.13  Informal Consultation

(a)  Informal consultation is an optional process that includes all discussions, correspondence, etc., between the Service and the Federal agency . . . designed to assist the Federal agency in determining whether formal consultation or a conference is required.  *If during informal consultation it is determined by the Federal agency, with the written concurrence of the Service, that the action is not likely to adversely affect listed species or critical habitat, the consultation process is terminated, and no further action is necessary.*

### § 402.14  Formal Consultation

(b) Exceptions. (1) A Federal agency need not initiate formal consultation if, . . . as a result of informal consultation with the Service under § 402.13, the Federal agency determines, with the written concurrence of the Director, that the proposed action is not likely to adversely affect any listed species or critical habitat.

50 C.F.R. §§ 402.13(a), 402.14(b) (emphasis added). Thus, section 7(a)(2) does not require formal consultation if the BLM has informally consulted the FWS, the FWS has issued a written concurrence in the action, and that concurrence is not arbitrary or capricious.

SUWA alleges that the BLM did not receive the FWS' written concurrence until after it began implementing the Schedule. It may well be that this violated section 7(a)(2). The record demonstrates, however, that the BLM has now completed informal consultation and has received the FWS' concurrence. In Document 68, its February 2, 1995 letter to the FWS, the BLM reviewed the two Agencies' long history of consultation regarding how best to protect the Milkweed from potentially harmful ORV use. The BLM explained the reasons for the Schedule and requested the FWS' concurrence.

Document 69 is the FWS' written concurrence. In that document, the FWS not only praises the BLM's actions in protecting the Milkweed, but explicitly states that the Schedule will not adversely impact the Milkweed. Furthermore, the FWS states that the Schedule is consistent with the 1992 Milkweed Recovery Plan, and recommends that the BLM keep the Schedule in place until a new management plan for the entire region is developed. This fully satisfies the consultation requirement of section 7(a)(2): "If during

informal consultation it is determined by the Federal agency, with the written concurrence of the Service, that the action is not likely to adversely affect listed species or critical habitat, *the consultation process is terminated, and no further action is necessary*." 50 C.F.R. § 402.13(a) (emphasis added).  An injunction ordering consultation is no longer warranted.  There is no point in ordering an action that has already taken place.  Cf. <u>Lone Rock Timber Co. v. United States Dep't of Interior</u>, 842 F. Supp. 433, 438 (D. Or. 1994) (finding moot the request for an injunction ordering the FWS to issue biological opinions, where the FWS issued the opinions during the pendency of the action).

Indeed, SUWA does not explain how an injunction ordering another round of consultation would provide any meaningful relief.  SUWA does not show any reasonable likelihood that such an order would result in any changes to the Schedule, or that either the BLM or the FWS would change its position on the Schedule.  If anything, the record suggests the opposite would be most likely; the FWS has praised the Schedule and has recommended that it remain in place until formal planning for the larger region is conducted.  Thus, ordering another round of consultation would confer only the most speculative benefit upon SUWA, and would not constitute effective relief.

Even more basic, SUWA does not explain how any injury still flows from the alleged violation.  At bottom, section 7(a)(2) is a mechanism for ensuring that a federal agency work closely with the FWS in formulating and implementing actions that could affect threatened or endangered species.  During the period leading up to the Schedule's

implementation, the BLM worked closely with the FWS in developing appropriate management strategies for the Milkweed, and the FWS has now expressly approved the Schedule's implementation. Therefore, if SUWA still suffers some alleged injury as a result of the Schedule's implementation, that injury must flow from the *content* of the Schedule, not from the BLM's delay in completing consultation with the FWS. SUWA challenged the content of the Schedule in its second and third causes of action in the district court. Those substantive attacks on the Schedule were denied on the merits, and SUWA did not appeal that denial.

An exception to the mootness doctrine arises in cases which are capable of repetition, yet evading review. Fischbach v. New Mexico Activities Ass'n, 38 F.3d 1159, 1161 (10th Cir. 1994). SUWA does not allege, however, that this case falls within that narrow exception. There is no showing that the BLM is likely to violate section 7(a)(2) in connection with some future Agency action, nor that the challenged action is of the type typically too short in duration to be fully litigated prior to its cessation.

SUWA raises three arguments as to why this suit should not be considered moot, but none are persuasive. First, SUWA renews its contention that Documents 68 and 69 should be stricken from the record because they were not part of the record at the time the BLM decided to implement the Schedule, and are merely post hoc rationalizations for the BLM's action. Although relevant to whether summary judgment was appropriate, this argument has no bearing on the issue of mootness. By definition, mootness concerns

events occurring *after* the alleged violation.  Even if Documents 68 and 69 cannot be considered for the purposes of determining whether the BLM originally violated section 7(a)(2), they can be considered in determining whether the relief SUWA seeks has already been obtained.  See, e.g., Cedar Coal Co. v. United Mine Workers of Am., 560 F.2d 1153, 1166-67 (4th Cir. 1977) (considering documents filed after the district court order for purposes of determining mootness, but not for purposes of ascertaining the merits).

Second, SUWA argues that section 7(a)(2) requires consultation and written concurrence prior to, rather than after, Agency action, suggesting presumably that the BLM's subsequent consultation could not moot this case.  Appellant's Br. at 19.  This begs the question.  Subsequent consultation is precisely the relief SUWA seeks.  If some other form of meaningful relief is available for this alleged injury, SUWA has not requested it.

Third, SUWA asserts that its request for injunctive relief is not moot because the BLM must *formally*, rather than informally, consult the FWS.  SUWA claims that formal consultation is required because it has produced evidence in the district court showing that ORV use "may affect" the Milkweed.  This argument does not square with the regulations, which speak of the FWS' concurrence that the action is not likely to adversely affect a threatened species.  If, after informal consultation, the BLM obtains the FWS' concurrence, formal consultation is expressly not required.  Although SUWA may

- 13 -

disagree with the FWS' concurrence, we are not persuaded that either the FWS or the BLM has acted arbitrarily or capriciously in determining that no adverse affect is likely and that no formal consultation is required in this case.

In sum, the defendants have satisfied section 7(a)(2)'s consultation requirement, and SUWA has not shown that an injunction would redress any injury. This is not to say that a violation of section 7(a)(2) could always be cured by subsequent consultation, nor is this general approval for consultation after the fact. Instead, this merely recognizes that the changed circumstances of this particular case no longer present an opportunity for meaningful relief.

## B.    Declaratory Relief

For the same reasons that injunctive relief is not available, a declaratory judgment also is not available. A declaratory judgment would serve no purpose in this case. This case does not involve a continuing violation or practice, and SUWA has not shown that the defendants are likely to violate section 7(a)(2) in the near future. A declaratory judgment would not affect the matter, and would be in the nature of an advisory opinion. See, e.g., Higgason v. Farley, 83 F.3d 807, 811 (7th Cir. 1996); Native Village of Noatak v. Blatchford, 38 F.3d 1505, 1514 (9th Cir. 1994).

## III.

For the foregoing reasons, neither we nor the district court have further jurisdiction in this matter. We VACATE the district court's judgment relating to SUWA's section 7(a)(2) claim, and REMAND with directions that the claim be dismissed. And, even if this suit were not moot in the strict Article III sense, we would nevertheless affirm the district court order denying relief on considerations of prudential mootness. See Penthouse Int'l, Ltd. v. Meese, 939 F.2d 1011, 1019-20 (D.C. Cir. 1991); Goldschmidt, 629 F.2d at 669; see also A.L. Mechling Barge Lines, Inc. v. United States, 368 U.S. 324, 331 (1961).

No. 95-4145, Southern Utah Wilderness Alliance v. Smith, et al.

McWilliams, J., dissents.

In my opinion the district court's judgment is so sketchy that we cannot make a meaningful review thereof.  Furthermore, on the record before us, I am not inclined to decide matters that should more properly be resolved, in the first instance, by the trial court.