**MICHIGAN PEAT, A DIVISION OF BAY–HOUSTON TOWING COMPANY, Plaintiff–Appellant,**

v.

**UNITED STATES ENVIRONMENTAL PROTECTION AGENCY; United States of America; Regional Administrator of Region V of the United States Environmental Protection Agency; State of Michigan; Michigan Department of Environmental Quality; Director of the Michigan Department of Environmental Quality, Defendants–Appellees.**

No. 98–1595.

United States Court of Appeals,
Sixth Circuit.

Argued Feb. 2, 1999.

Decided April 28, 1999.

& Natural Resources Division, Washington, DC, for Defendant–Appellee United States Environmental Protection Agency.

S. Peter Manning (argued and briefed), Office of Attorney General, Environmental Protection Division, Lansing, MI, for Defendants–Appellees State of Michigan, Michigan Department of Environmental Quality and Rusell J. Harding.

Before: SILER, BATCHELDER, and COLE, Circuit Judges.

## OPINION

SILER, Circuit Judge.

Plaintiff, Michigan Peat, a division of Bay–Houston Towing Co., filed a declaratory action against defendants, the United States of America, the United States Environmental Protection Agency ("EPA"), the Regional Administrator of Region V of the EPA ("Region V Administrator"), the State of Michigan, the Michigan Department of Environmental Quality ("MIDEQ"), and the Director of the MIDEQ ("Director"), generally seeking a finding that defendants (1) acted contrary to the regulations and statutory law that govern the unified Clean Water Act ("CWA") Section 404 program, and (2) violated Michigan Peat's constitutional rights. The district court dismissed the action against the federal defendants for lack of subject-matter jurisdiction and dismissed the action against the state defendants on grounds that the suit was barred by the Eleventh Amendment. For the following reasons, we AFFIRM the dismissal of the action against the state defendants and REVERSE the dismissal of the action against the federal defendants.

## BACKGROUND

### *Statutory Framework*

■ The CWA was enacted "to restore and maintain the chemical, physical, and biological integrity of the Nation's waters." 33 U.S.C. § 1251(a). It prohibits the dis-

Steven D. Weyhing (argued and briefed), Butzel Long, Ann Arbor, MI, for Plaintiff–Appellant.

Robert L. Klarquist (argued and briefed), U.S. Department of Justice, Land

charge of any pollutant into the navigable waters of the United States except when authorized by a permit or exception spelled out in the Act. *See* 33 U.S.C. § 1311(a). Wetland areas are considered navigable waters for purposes of applying the Act. *See United States v. Riverside Bayview Homes, Inc.,* 474 U.S. 121, 106 S.Ct. 455, 88 L.Ed.2d 419 (1985).

Section 404 of the CWA authorizes the Secretary of the Army, acting through the United States Army Corps of Engineers ("Corps"), to issue permits allowing the release of dredged and fill matter into the waterways subject to the terms and procedures set forth in the CWA. *See* 33 U.S.C. § 1344(a). The CWA empowers the EPA to authorize a unified wetlands permitting program which gives a state the authority to render a comprehensive federal/state wetland permit decision with the federal government playing the role of the overseer in the consideration of permit applications. *See* 33 U.S.C. §§ 1344(g)-(m); 40 C.F.R. §§ 233.10–233.16, 233.53. In short, the scheme provides applicants with "one stop shopping" for a wetland permit.[1] Under the Section 404 program, the EPA retains full enforcement authority. *See* 33 U.S.C. § 1344(n). To date, only Michigan and New Jersey have been approved to operate the Section 404 scheme. *See* 40 C.F.R. §§ 233.70, 233.71. Michigan has been operating its program for 13 years, currently through the MIDEQ. *See* 40 C.F.R. § 233.70.

In order to obtain a permit to engage in activity within a wetland in Michigan, an applicant must proceed through the prescribed permit process. *See* 40 C.F.R. § 233.30. A brief outline of the steps in the application process follows:

1. An applicant must file an application with the Director of the MIDEQ.

2. Once the application is deemed complete, the MIDEQ must issue a public notice announcing the opportunity to request a public hearing.

a. The minimum time for public notice is 30 days during which interested parties may express their views concerning the application.

b. Any interested person may request a public hearing, which will be held at the MIDEQ's discretion.

3. The MIDEQ must promptly send the EPA a copy of the application.

4. Within 10 days of its receipt of the application, the EPA must forward the application to the Corps, the United States Fish & Wildlife ("USFW"), and the National Management Forestry Service ("NMFS").

a. These agencies must advise the EPA of their desire to comment on the application within 15 days of their receipt of the application.

b. If these agencies desire to comment, they must submit their comments to the EPA within 50 days of their receipt of the application.

5. Within 30 days of its receipt of the application, the EPA must indicate to the MIDEQ in writing whether it will comment on the application.

a. If the EPA declines to comment, the MIDEQ may issue a permit after the close of the public comment period upon (1) reviewing the application for compliance with designated environmental criteria, and (2) considering all comments received. The MIDEQ's determinations regarding each application must be in writing and the basis thereof must be outlined.

6. Within 90 days of its receipt of the application, the EPA must provide its written comments and issue objections to the permit request.

---

[1]. In the most simplistic terms, the Section 404 program administered by a state "suspends" the federal program in that particular state because the state's own program is environmentally sound. *See* 33 U.S.C.

§§ 1344(g)(1), 1344(h)(2)(A). The Section 404 program does not allot all the power to the state or to the federal government, but rather the two share joint control. In essence, they are partners.

a. If the EPA timely objects, the State shall not issue the proposed permit unless it modifies the permit in accordance with the EPA's comments.

b. If the State does not satisfy the EPA's objections or deny the permit, authority to process the Section 404 permit is transferred to the Corps.

c. In cases where the EPA objects to the issuance of a permit, within 90 days after the propoundment of any objections by the EPA and after discussions with the Director of the MIDEQ, the EPA may withdraw its objections and a final permit decision may issue.

d. If the EPA's objections are not timely, the State may not issue a permit, but must forward the application to the Corps.

7. Based on whether 6(a), (b), (c) or (d) occurs, a permit may or may not issue. *See* 33 U.S.C. § 1344(j); 40 C.F.R. §§ 233.30–53.

The Section 404 scheme does not usurp the state's authority to issue a permit under state law.

### *Facts*

Michigan Peat engages in business activities which include the extraction of peat. It owns and controls two noncontiguous parcels of land in Minden, Sanilac County, Michigan, referred to as Minden North and Minden South and situated within a wetland area known as the Minden Bog. The Minden North parcel is approximately 2,000 acres and the Minden South parcel comprises approximately 819 acres. Since 1958, Michigan Peat has extracted peat from a portion of the Minden North site.

In 1991, Michigan Peat filed a wetland permit application under the Section 404 program which would authorize it to discharge dredged or fill materials and to conduct related activities at the Minden tracts. Midway through the application process, the State of Michigan requested that Michigan Peat place its then incomplete application on hold and develop an environmental site assessment ("ESA"). Michigan Peat complied; it developed an ESA from 1992–1994. In September 1994, Michigan Peat renewed its permit application to expand its operations to Minden South and to the unopened portions of Minden North. Specifically, Michigan Peat requested (1) a definition concerning the extent of the peat mining areas which were opened prior to October 1, 1980, (2) an after-the-fact authorization for areas where peat mining was initiated after October 1, 1980, and (3) authorization to expand the peat removal operations into an additional 1,792 acres of previously unmined wetlands.

Thereafter, the EPA reviewed Michigan Peat's application and on October 6, 1994 notified the MIDEQ Section 404 Director that it intended to comment. The EPA forwarded its written comments, as well as those of the Corps and the USFW, to the MIDEQ on December 23, 1994. The EPA objected to the permit application which sought permission to expand mining from 951 to all 2,819 acres of the facility. Michigan Peat responded to the EPA's objections. The MIDEQ and the EPA discussed the latter's objections and created a revised draft permit. With its concerns addressed by the new draft permit, on March 21, 1995 the EPA withdrew its objections.[2] Thereafter, the MIDEQ tendered a proposed permit to Michigan Peat along with a letter which outlined the proposed permit. The letter read in part:

> Approximately 749 acres of the bog [Minden North] ... were impacted prior

---

2. The EPA's letter to the MIDEQ stated:
The State's draft permit effectively addresses concerns previously raised by EPA and, on that basis, I am withdrawing our objection in accordance with provisions of 40 C.F.R. 233.50(j), on condition than the final permit not differ materially from this draft. If there are substantive changes to this draft decision by MDNR, we would need to review these changes to determine whether or not they are material to us.

to October 1, 1980 and therefore do not fall under [our] jurisdiction.

. . .

Approximately 202 acres of the bog [Minden North] have been impacted from October 1, 1980 to the present. . . . [A]n after the fact permit can be issued for the 202–acre area if the applicant agrees to accept all conditions shown on the attached permit. Please be advised that failure to accept the permit leaves the company with no authorization to extract peat within the areas opened since October 1, 1980.

Attached you will find a modified permit for continuation of peat mining in areas defined in the paragraph above. This permit is not valid until it is signed by the permittee. The applicant is requested to fully review the limitations (conditions) and terms of the permit. Upon agreeing to accept and comply with all limitations (conditions) and terms of the permit, the applicant must sign, date, and return it to this office. The signed permit must be received by this office no later than 15 days from the date of this letter.

. . .

[T]he portion of your application proposing expansion of the peat removal operation into the unmined area of the Minden Bog [to wit—the remainder of Minden North, approximately 1049 acres, and the entire Minden South parcel, approximately 819 acres] is hereby denied.

The permit also set forth which lands Michigan Peat could impact and outlined the limitations (conditions) imposed on Michigan Peat upon acceptance of the proposed permit. Just above the signature line, the permit read: "This permit shall become valid on the date of signature by the permittee. Upon signing by the permittee, a copy of the signed permit must be returned to the [MIDEQ]." Michigan

Peat did not sign and return the tendered permit.

Rather, Michigan Peat decided to accept Part I of the decision, but to contest Parts II and III in two different forums. Pursuant to Michigan's Administrative Procedures Act, MICH. COMP. LAWS § 24.201 et seq. ("APA"),[3] Michigan Peat initiated a state administrative appeal of Part II of the permit, the after-the-fact permit subject to conditions. Part II of the permit contained several conditions unacceptable to Michigan Peat, to wit—(1) a requirement that Michigan Peat place land in a conservation easement in order to utilize the permit, (2) a complete waiver requirement, and (3) an indemnification requirement for the benefit of the State of Michigan. Concurrently, Michigan Peat filed an action against the MIDEQ in the Michigan Court of Claims asserting federal and state takings claims based on Part III of the permit decision, the complete prohibition against peat harvesting on approximately 2,000 acres of Michigan Peat's property. Shortly after the state suit was filed, the parties entered a joint stipulation, which allowed Michigan Peat to continue operating on the 951 acres of the Minden facility that the MIDEQ had authorized in Part I of its proposed permit.

On June 6, 1997, the MIDEQ Director issued Michigan Peat a state-only permit which granted Michigan Peat authorization under all applicable state wetland laws to extract peat on 2,819 acres of the company's Minden parcels, subject to certain restrictions. The permit stated that it modified the March 21, 1995 permit decision by allowing the expansion of peat extraction into all previously unmined portions of Minden North and Minden South. The permit concluded with the following caveat:

ISSUANCE OF THIS PERMIT DOES NOT AUTHORIZE ANY WORK UN-

---

**3.** The APA contains a provision that allows a business activity of a continuing nature operating under a previous license or charter to

continue to operate while appealing a permit decision. *See* MICH. COMP. LAWS § 24.291.

DER THE AUTHORITY OF THE FEDERAL CLEAN WATER ACT. Any work initiated on this project without required § 404 approval may be considered a violation of Federal Law. For further information, contact the United States Environmental Protection Agency, Region 5.

The cover letter which accompanied the state permit suggested that Michigan Peat contact the Corps for federal authorization.

On June 18, 1997, the EPA wrote the MIDEQ (with a copy to Michigan Peat) in response to the issuance of the state permit. The EPA observed that the state permit differed greatly from the proposed Section 404 permit, which it contended had been rejected by Michigan Peat by its refusal to sign and return it and by its dual challenges to it and thus had never become effective. Additionally, the EPA articulated that it had objected to earlier proposals to authorize certain activities encompassed in the new state permit and reiterated its previously-stated objections. Finally, the EPA concluded that because the MIDEQ had failed to issue a final permit which satisfied the EPA's objections, authority to process Michigan Peat's permit application rested with the Corps by operation of law.

On June 23, 1997, the Corps advised Michigan Peat that it would handle the Section 404 permitting procedure with regard to the Minden parcels and would begin its process upon receipt of a complete application.

### Course of Proceedings

Prior to the issuance of the state-only permit, on May 16, 1997, Michigan Peat filed for declaratory relief in federal court specifically seeking a determination that: (1) Michigan Peat's conduct fully complies with the Section 404 program for the State of Michigan; (2) Michigan Peat's permit process, including the appellate and takings remedies pursued by Michigan Peat fully comply with and are a part of the Section 404 program; (3) the federal government is bound by the March 1995 permit decision; (4) a state court order be entitled to full faith and credit; (5) the EPA is barred by estoppel from modifying Michigan's approved permit program and circumventing the permit process; (6) the EPA's express threats to circumvent the CWA and its promulgated regulations including its demand that Michigan Peat stay or dismiss its constitutional and statutory takings claims, constitute denial of Michigan Peat's procedural and substantive due process rights under the U.S. Constitution; (7) the EPA's effort to modify the program and circumvent the permit process constitutes an impairment of contract in violation of Article I, section 10, clause 1 of the U.S. Constitution; (8) Michigan Peat's harvesting activities are exempt from regulation under Michigan's Section 404 program; (9) the disparate treatment of Michigan Peat under the delegated program constitutes a violation of the equal protection clause of the U.S. Constitution; and (10) the state-only permit does not modify the 1995 permit decision and does not strip Michigan Peat of its appellate rights and remedies under the Section 404 program. Subsequently, the district court dismissed the claims asserted against the state defendants based on their Eleventh Amendment immunity, and dismissed the claims asserted against the federal defendants for lack of subject-matter jurisdiction over suits for pre-enforcement relief.

### DISCUSSION

*The district court erred by dismissing Michigan Peat's action against the federal defendants.*

■ We review questions of subject-matter jurisdiction *de novo. See Friends of the Crystal River v. Untied States Envtl. Protection Agency*, 35 F.3d 1073, 1077 (6th Cir.1994).

■ Michigan Peat argues that the issuance of the March 21, 1995 permit was a final agency action and therefore subject

to judicial review. On the other hand, the federal defendants contend that the issuance of the proposed permit was not a final agency action and therefore not subject to judicial review. Michigan Peat correctly cites *Friends of the Crystal River*, a case involving the CWA Section 404 program in Michigan. In that case, this court recognized the difference between challenges to final agency actions and challenges to pre-enforcement actions and stated that the latter are not subject to judicial review while the former are subject to judicial review. *Id.* at 1077–78.

The federal defendants' reliance on *Southern Ohio Coal Co. v. Office of Surface Mining, Reclamation, and Enforcement*, 20 F.3d 1418, 1426–27 (6th Cir.1994), is misplaced. In that case, this circuit followed the lead of the Fourth and Seventh circuits which previously found that "district courts lack jurisdiction to review compliance orders prior to the commencement of enforcement proceedings." *Id.* (citing *Southern Pines Assocs. v. United States*, 912 F.2d 713, 716 (4th Cir.1990), and *Hoffman Group Inc. v. Envtl. Protection Agency*, 902 F.2d 567, 569 (7th Cir. 1990)). *Southern Ohio Coal Co.* involved an emergency situation constituting a violation of an existing Section 402 permit. Plaintiff in that case challenged the EPA's pre-enforcement emergency response activity, not a final agency action.

■ The outcome of this issue turns on whether the EPA committed a final agency action. In the case at bar, the federal defendants timely voiced their objections throughout the application process, but ultimately withdrew them and agreed to the proposed 1995 permit that the MIDEQ sent to Michigan Peat. While it is true that

the 1995 permit specifically stated that it was not final or valid until signed and accepted by the permittee and returned to the MIDEQ, the logical conclusion is that the EPA's action was final. Statutorily, there was nothing left for the EPA to do once it signed off on the proposed permit. Moreover, if Michigan Peat did sign the permit it would have waived the appellate remedies it is pursuing. Therefore, the district court erred in finding that it did not have subject-matter jurisdiction over the final agency action.[4]

***The district court did not err by dismissing Michigan Peat's action against the state defendants.***

■ We review questions involving the Eleventh Amendment *de novo* as they are issues of law. *See Timmer v. Michigan Dep't of Commerce*, 104 F.3d 833, 836 (6th Cir.1997).

■ The district court correctly found that the Eleventh Amendment shields Michigan and the MIDEQ from Michigan Peat's claims. First, Congress has not abrogated Michigan's immunity. *See Franks v. Kentucky Sch. for the Deaf*, 142 F.3d 360, 363 (6th Cir.1998) (holding that the only remaining authority under which Congress can abrogate Eleventh Amendment immunity is section 5 of the Fourteenth Amendment). Clearly, Congress has not attempted to abrogate the states' Eleventh Amendment Immunity by enacting the CWA which was promulgated under Article I powers, not pursuant to the Fourteenth Amendment. Second, Michigan has not unequivocally waived its Eleventh Amendment immunity. *See Edelman v. Jordan*, 415 U.S. 651, 673, 94 S.Ct. 1347, 39 L.Ed.2d 662 (1974) (requiring that such a waiver be "unequivocally expressed").

4. The federal defendants contend that Michigan Peat's complaint and amended complaint are mooted by the EPA's filing of an enforcement action against Michigan Peat in the United States District Court for the Eastern District of Michigan in June 1998. The federal defendants rely on the theory of "prudential mootness." *See Southern Utah Wilderness Alliance v. Smith*, 110 F.3d 724, 727 (10th

Cir.1997). Acceptance of defendants' argument turns on a finding that the enforcement action will resolve the claims raised by Michigan Peat in the underlying action. A review of Michigan Peat's amended complaint indicates that this is simply not the case. Accordingly, this court finds that Michigan Peat's appeal is not moot. Maybe the two cases can be consolidated on remand of this case.

The fact that Michigan volunteered to involve itself in the Section 404 program does not constitute consent to be sued in federal court. As neither of the only two circumstances exist in which Eleventh Amendment immunity may be waived, the state defendants are protected by the Eleventh Amendment. *See Thiokol Corp. v. Michigan Dep't of Treasury*, 987 F.2d 376, 381 (6th Cir.1993).

■ The district court was correct in finding that Michigan Peat may not sue the Director of the MIDEQ under the doctrine of *Ex Parte Young*, 209 U.S. 123, 28 S.Ct. 441, 52 L.Ed. 714 (1908). While the district court followed *Idaho v. Coeur d'Alene Tribe of Idaho*, 521 U.S. 261, 268–278, 117 S.Ct. 2028, 138 L.Ed.2d 438 (1997),[5] an additional reason for shielding the Director from Michigan Peat's claims in federal court is that Michigan Peat failed to allege that the Director has individually taken actions which constitute continuing violations of federal law.

Accordingly, the district court's dismissal of Michigan Peat's claims against the state defendants based on the Eleventh Amendment immunity bar is AFFIRMED and the district court's dismissal of Michigan Peat's claims against the federal defendants based on the lack of subject-matter jurisdiction is REVERSED. This case is REMANDED for further proceedings in accordance with this opinion.

---

**5.** The district court found that Michigan Peat "has not shown lack of a 'state forum available to vindicate federal interests' and does not seek 'prospective relief based on federal violations' to vindicate a federal right." While Michigan Peat contends that it seeks to prevent future negative consequences flowing from legal recognition of the issuance of the state-only permit, in actuality, to cure the "future consequences" of the past act, the court must address the past act, to wit—the June 1997 permit.